## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY MORGAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INTERMOLECULAR, INC., CHRIS KRAMER, KENNETH H. TRAUB, IRWIN FEDERMAN, MARVIN D. BURKETT, GEORGE SCALISE, MATTHEW S. FURNAS, ADAM SCHEER, and JONATHAN B. SCHULTZ,<br><br>Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Timothy Morgan ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Intermolecular, Inc. ("Intermolecular" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning the Company and the Defendants.

**SUMMARY OF THE ACTION**

1.  Plaintiff brings this class action on behalf of the public shareholders of Intermolecular against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to affiliates of Merck KGaA: EMD Group Holding II, Inc., ("Parent") and EMB Performance Materials Semiconductor Services Corp. ("Merger Sub," and collectively with Parent, "Merck") (the "Proposed Transaction").

2.  On May 6, 2019, the Company announced that it had entered into a definitive agreement (the "Merger Agreement") with Merck, pursuant to which Merger Sub will merge with and into the Company (the "Merger"), with the Company continuing as the surviving corporation and a wholly owned subsidiary of Merck. Pursuant to the terms of the Merger Agreement, upon successful completion of the merger, each Intermolecular common share issued and outstanding will be converted into the right to receive $1.20 per share in an all cash transaction (the "Merger Consideration"). The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the stockholders of Intermolecular.

3.  On May 28, 2019, in order to convince Intermolecular stockholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.  For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Intermolecular and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the

Proposed Transaction unless and until the material information discussed below is disclosed to Intermolecular's stockholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of Intermolecular common stock.

9. Defendant Intermolecular is a Delaware corporation with its principle executive offices located at 3011 North First Street, San Jose, California 95134. The Company's common stock is traded on the NASDAQ under the symbol "IMI."

10. Defendant Chris Kramer ("Kramer") is and has been the Company's Chief Executive Officer and member of the Company's Board at all times during the relevant time period.

11. Defendant Kenneth H. Traub ("Traub") is and has been the Chairman of the Company's Board at all times during the relevant time period.

12. Defendant Irwin Federman ("Federman") is and has been a member of the Company's Board at all times during the relevant time period.

13. Defendant Marvin D. Burkett ("Burkett") is and has been a member of the Company's Board at all times during the relevant time period.

14. Defendant George Scalise ("Scalise") is and has been a member of the Company's Board at all times during the relevant time period.

15. Defendant Matthew S. Furnas ("Furnas") is and has been a member of the Company's Board at all times during the relevant time period.

16. Defendant Adam Scheer ("Scheer") is and has been a member of the Company's Board at all times during the relevant time period.

17. Defendant Jonathan B. Schultz ("Schultz") is and has been a member of the Company's Board at all times during the relevant time period.

18. Defendants Kramer, Traub, Federman, Burkett, Scalise, Furnas, Scheer, and Schultz are collectively referred to herein as the "Individual Defendants."

19. Defendant Intermolecular, along with the Individual Defendants, are collectively referred to herein as "Defendants."

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Intermolecular (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

21. This action is properly maintainable as a class action for the following reasons:

   a. The Class is so numerous that joinder of all members is impracticable. As of May 10, 2019, there were approximately 49,758,224 common shares of Intermolecular outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

   b. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Proxy Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy Statement as currently composed.

   c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

   d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

        e.        The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

        f.        A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

22.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

23.    Intermolecular, a Delaware corporation, provides materials innovation research services using high throughput experimentation on a contract basis. Using client specifications and its proprietary HPC techniques, which allows it to evaluate many combinations of material types and thickness, the Company performs experiments designed to identify promising materials and material components for client use. The Company targets large markets that rely on advanced materials for differentiation and specifically targets customers within these markets that have track records of technological innovation, have significant materials-based research and development, and are pursuing technical advancements that are critical to their success and strategy. While the Company does not design, develop, produce or test end products or devices, the Company's customers use its services to select improved materials for a variety of products, including memory, display LED, logic, architectural glass coating and solar panels.

**The Company Announces the Proposed Transaction**

24. On May 6, 2019, the Company issued a press release announcing the Proposed Transaction, which stated, in pertinent part:

> SAN JOSE, Calif., May 6, 2019 /PRNewswire/ --Intermolecular, Inc. (NASDAQ: IMI) has signed a definitive agreement pursuant to which a wholly owned subsidiary of Merck KGaA, Darmstadt, Germany, a leading science and technology company, will acquire Intermolecular for $1.20 per share in an all cash transaction, representing an equity value of Intermolecular of approximately $62 million. The acquisition has been unanimously approved by Intermolecular's Board of Directors and the Executive Board of Merck KGaA, Darmstadt, Germany.
> "We are pleased to become an integral part of Merck KGaA, Darmstadt, Germany's leading electronic materials business and look forward to all of the new and exciting opportunities we see for our customers and employees. We believe our technology expertise is very complementary and creates a unique offering that will continue to shape the innovations of tomorrow," said Chris Kramer, President and Chief Executive Officer of Intermolecular.
>
> "Intermolecular's unique capabilities in rapid material screening, in combination with the R&D pipeline of Merck KGaA, Darmstadt, Germany, will allow us to offer our customers faster materials innovation, through parallel composition experiment and full performance testing and characterization," said Kai Beckmann, member of the Merck KGaA, Darmstadt, Germany, Executive Board and CEO of Performance Materials. "We are excited to join forces with Intermolecular and bring significant advantages to our customers compared to conventional materials R&D."
> The transaction is expected to close in the second half of 2019, subject to the approval of Intermolecular's stockholders, clearance by the Committee on Foreign Investment in the United States (CFIUS) and the satisfaction of other customary closing conditions.
>
> Merck KGaA, Darmstadt, Germany, will acquire Intermolecular through its wholly owned subsidiary EMD Group Holding II, Inc.
>
> As a result of this transaction, Intermolecular will not be holding its previously scheduled conference call on May 14, 2019.
>
> **Advisors**
>
> Cowen served as exclusive financial advisor to Intermolecular and Latham & Watkins LLP served as Intermolecular's legal advisor.  Nixon Peabody LLP served as Merck KGaA, Darmstadt, Germany's legal advisor.

**The Proposed Transaction is Unfair to Shareholders**

25. The Proposed Transaction, as currently contemplated, is unfair to the Company's shareholders.

26. For instance, when entering into the Merger Agreement, the Company's Board agreed to preclusive deal protection devices that ensure that no competing offers for Intermolecular will be forthcoming.

27. Specifically, pursuant to the Merger Agreement, Defendants agreed to: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers; (ii) an information rights provision that requires the Company to keep Merck informed of the status and material terms of any proposals or offers received concerning a bona fide acquisition proposal; and (iii) a provision that requires the Company to pay Merck a termination fee of $2.3 million if the Company terminates the Proposed Transaction under specified circumstances.

28. These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Intermolecular. Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that the Company's shareholders receive all material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Transaction.

**FALSE AND MISLEADING STATEMENTS
AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT**

29. On May 28, 2019, the Company filed the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's stockholders vote in favor of the Proposed Transaction.

30. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Management's Financial Projections

31. The Proxy Statement contains financial projections prepared by Intermolecular's senior management in connection with the Proposed Transaction, but fails to provide material information concerning such.

32. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measurestheseces evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

9

forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

33. In order to make management's financial projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

34. With respect to Intermolecular's Financial Projections, at the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including, but not limited to (i) Adjusted EBITDA; and (ii) cash taxes.

35. Disclosure of the above line item projections is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Cowen's Financial Opinion

36. The Proxy Statement contains the financial analyses and opinion of Cowen and Company, LLC ("Cowen") concerning the Proposed Transaction, but fails to provide material information concerning such.

37. With respect to Cowen's *Analysis of Selected Publicly Traded Companies*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed in Cowen's analysis.

38. With respect to Cowen's *Analysis of Selected Transactions*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed in Cowen's analysis.

39. Next, with respect to Cowen's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) projected unlevered free cash flow for the six-month period ending on December 31, 2019 and the full fiscal years ending in 2020 through 2023, as well as the underlying line items; (ii) terminal value of Intermolecular; (iii) inputs and assumptions underlying the discount rates ranging from 16.5% to 18.5%; (iv) inputs and assumptions underlying the range of perpetuity growth rates of 8.3% to 12.8%; and (v) the basis for selecting terminal multiples of Adjusted EBITDA ranging from 4.0x to 6.0x.

40. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

41. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Background of the Proposed Transaction**

42. Lastly, the Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction

43. The Proxy Statement notes that at the direction of the Strategic Committee, during the period between December 21, 2016 and February 7, 2017, representatives with Cowen and

management contacted 25 potential strategic transaction counterparties in China and two potential counterparties outside of China. However, the Proxy Statement fails to disclose the reasoning for contacting each of the potential strategic transaction counterparties mentioned above.

44. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transaction. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

47. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §

240.14a-9.

48.     The Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

49.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

50.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

51.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

52.     The Defendants were, at the very least, negligent in preparing and reviewing the

Proxy Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

53. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

54. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

55. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56. The Individual Defendants acted as controlling persons of Intermolecular within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Intermolecular, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company,

including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

57. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

59. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate

result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

62.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.    Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 12, 2019                                 Respectfully submitted,

                                                     By: */s/ Joshua M. Lifshitz*
                                                     Joshua M. Lifshitz
                                                     Email: jml@jlclasslaw.com

**LIFSHITZ & MILLER LLP**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, Timothy Morgan, hereby certify that:

1. Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in IMI securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.

5. I have not served as or sought to serve as a representative party on behalf of a Class under this title during the last three years.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 05/29/2019

_[signature]_

    Signature

## **Exhibit A**

My transactions in Intermolecular, Inc. (IMI) securities that are the subject of this litigation during the class period set forth in the complaint are as follows ("P" indicates a purchase, "S" indicates a sale):

| Security | Date | Sale | Purchase | Number of Shares | Price per Share |
|---|---|---|---|---|---|
| IMI | 07/17/2013 |  | P | 800 | $7.13 |